UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHANE A. HOLLOWAY,      )<br>    *Plaintiff*,      )<br>    )<br>    *vs*.      )<br>    )<br>DELAWARE COUNTY SHERIFF, in his official )<br>capacity; LEANNA R. ST. MYER; NURSE TERRI )<br>HAMILTON; NADIR H. AL-SHAMI, M.D., in )<br>their individual capacities,      )<br>    *Defendants*.      )<br>    ) | 1:10-cv-01007-JMS-DML |

## **ORDER**

Presently before the Court are Plaintiff's Motion for Leave to File Sur-Response, [dkt. 87], and Defendants' Motions for Summary Judgment, [dkts. 67; 74], which the Court **GRANTS** for the reasons that follow.

### I.
#### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish

1

the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

The following facts are either undisputed, or presented in the light most favorable to the Plaintiff.

During all times relevant to his Second Amended Complaint, [dkt. 46], Plaintiff Shane Holloway was detained at the Delaware County Jail.

On Tuesday, September 29, 2009, Mr. Holloway left his home to drive to Anderson, Indiana with a friend. [Dkt. 69-1 at 4-5.] En route, he was pulled over by police and taken to the office of Delaware County sheriff's office. [*Id*. at 10.] Mr. Holloway arrived at the sheriff's office around 5:00 p.m. and was interrogated from approximately 5:30 to 5:45. [*Id*.] Shortly afterward, Mr. Holloway was taken to a holding cell, fingerprinted, showered, and processed. [*Id*. at 10-12.] Mr. Holloway was subsequently moved to a jail cell. [*Id*.]

On September 30, 2009, Delaware County Master Commissioner Peckinpaugh made a probable cause determination that Mr. Holloway had been dealing in a controlled substance as a class B felony and maintaining a common nuisance as a class D felony. [*Id*. at 13-14.] On October 2, 2011, Mr. Holloway had a video conference hearing before Delaware County Master Commissioner Speece. [*Id*. at 13-15.] At that hearing, Mr. Holloway was informed of his rights and told that probable cause for his arrest had been previously determined on September 30, 2009, by Delaware County Master Commissioner Peckinpaugh. [*Id*.] The Delaware County Court ordered Mr. Holloway to be held without bond. [*Id*.] The Court further ordered that Mr. Holloway was to be released if no formal charges had been filed against him by 9 a.m. of October 7, 2009. [*Id*.]

Throughout his stay at the Delaware County Jail, Mr. Holloway was under the care of the facility's medical staff. [Dkt. 75 at 2.] Mr. Holloway suffers from Klippel-Trenaunay Syndrome, a blood clotting disorder that causes him chronic pain. [Dkt. 78-1 at 3.] The treatment of Mr. Holloway by the Delaware County Jail medical staff was as follows:

> **Sep. 29**: Mr. Holloway was examined by Defendant Nurse Leanne St. Myer, who reported to Defendant Dr. Al-Shami that Mr. Holloway had been previously taking the

narcotic pain medication Oxycontin. [Dkt. 75 at 3-4.] Dr. Al-Shami prescribed Ibuprofen 600 mg and Tylenol Extra Strength to manage Mr. Holloway's pain. [*Id*. at 4.] He also prescribed Vistaril, Clonidine, and Donnatal to prevent and treat narcotic withdrawal symptoms. [*Id*.] Dr. Al-Shami also prescribed Metoprolo, Coumadin, and Nexium, the other medications Mr. Holloway had been taking prior to his detention. [*Id*. at 5.]

**Sep. 30**: Defendant Nurse Terri Hamilton administered medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. [*Id*.]

**Oct. 1**: Nurse Hamilton administered morning medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. Dr. Al-Shami authorized the prescription of Elavil, and ordered in increase in the Visteril, Tylenol, and Ibuprofen. [*Id*. at 6.] Nurses Hamilton and St. Myer administered medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. [*Id*.]

**Oct. 2**: Nurses Hamilton and St. Myer administered medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. [*Id*. at 6-7.]

**Oct. 3**: Nurse Hamilton and another nurse administered medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. [*Id*. at 7.] Nurse St. Myer was not on duty. [*Id*.]

**Oct. 4**: Neither Nurse Hamilton nor Nurse St. Myer were on duty. Other nurses administered medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. [*Id*. at 7-8.]

**Oct. 5**: Nurse Hamilton and another nurse administered medication to Mr. Holloway pursuant to Dr. Al-Shami's orders. [*Id*. at 8.] Nurse St. Myer was not on duty. [*Id*.] Mr. Holloway refused his morning dose of Tylenol and Ibuprofen. [*Id*.]

**Oct. 6**: Nurses Hamilton and St. Myer administered medication to Mr. Holloway pursuan to Dr. Al-Shami's orders. [*Id*. at 8-9] Mr. Holloway refused his morning dose of Tylenol and Ibuprofen. [*Id*. at 9]

**Oct. 7**: Nurse Hamilton administered Mr. Holloway's morning doses pursuant to Dr. Al-Shami's orders. [*Id*.]

Mr. Holloway was released from jail the morning of October 7, 2009. [Dkt. 69-1 at 12.] Mr. Holloway was thereafter admitted to Goshen General Hospital for approximately 4-5 days, during which time he resumed his regimen of Oxycontin. [Dkt. 78-1 at 3-4.]

In August 2010, Mr. Holloway filed § 1983 suits against Defendants Dr. Al-Shami, Nurse Hamilton, Nurse St. Myer, and the Delaware County Sheriff. [Dkt. 1.] Mr. Holloway filed an Amended Complaint in November 2010, [dkt. 27], and a Second Amended Complaint

4

in June 2011, [dkt. 46]. In his Second Amended Complaint, Mr. Holloway claimed "a loss of liberty, physical pain, mental suffering, emotional distress, [and] loss of freedom and liberty," [dkt. 46 at 4], as a result of the alleged constitutional deprivations. [*Id.*] Defendants now seek summary judgment. [Dkts. 67, 74.]

## III.
### DISCUSSION[1]

Mr. Holloway has sued Defendants under 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments by the Delaware County Sheriff, and violations of the Eighth Amendment by Dr. Al-Shami, Nurse Hamilton, and Nurse St. Myer. [Dkt. 46.] The Court will consider each claim in turn.

**A. Mr. Holloway' § 1983 Claims Against Delaware County Sheriff**

Mr. Holloway has brought suit against the Delaware County Sheriff ("the Sheriff") in his official capacity, which is effectively equivalent to bringing suit against the municipality for which he works. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690, n. 55 (1978)). The United States Supreme Court has held that § 1983 claims may be properly brought against municipalities and other local governmental entities for actions by its employees only if those actions were taken pursuant to an unconstitutional policy or custom. *Id*. at 690. A successfully established *Monell* claim can fall under one of the following three categories:

(1) an express policy that, when enforced, causes a constitutional deprivation;
(2) a widespread practice that, although not authorized by written or express municipal policy, is so permanent and well-established as to constitute a "custom of usage" with the force of law; or
(3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Estate of Moreland v. Dieter*, 395 F.3d 747, 758-59 (7th Cir. 2004) (internal citations omitted).

---

[1] For complete development of the record, the Court grants Mr. Holloway's Motion for Leave to File Sur-response, [dkt. 86].

Here, Mr. Holloway has not provided sufficient evidence to support the inference that he suffered a constitutional deprivation as a result of one of the aforementioned types of unconstitutional policies or customs. In his response brief, Mr. Holloway does not challenge the Sheriff's argument that Mr. Holloway was given a timely probable cause determination and initial hearing, [*see* dkt. 78-1]. But he maintains that a constitutional deprivation nonetheless occurred because he "was held for nine (9) days without ever being arraigned or informed of the charges against him, or even having charges filed against him." [*Id*. at 5.] He is mistaken.

It is undisputed that Mr. Holloway had a probable cause determination within 48 hours of his arrest, as required by *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975); that the Sheriff brought him to his initial hearing within three days of his arrest, as required by *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); and that the Sheriff released him within 72 hours of his initial hearing – excluding weekends – in accordance with the Delaware County Court's order of October 2, 2009, and Indiana Code § 35-33-7-3-(b). The Sheriff cannot be said to have violated Mr. Holloway's right to due process by following a court order regarding his detention. *See Hernandez v. Sheahan*, 455 F.3d 772, 778 (7th Cir. 2006) ("There is no basis for an award of damages against executive officials whose policy is to carry out the judge's orders."). Therefore, Court finds Mr. Holloway has not presented sufficient evidence to support the inference that the length of his detention amounted to a constitutional deprivation.

Furthermore, even assuming Mr. Holloway could show that he suffered a constitutional violation regarding the length of his detention, the Sheriff would still be entitled to summary judgment because Mr. Holloway has failed to show that the alleged deprivation was a result of an existing policy, rather than an isolated incident. *See Palmer v Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("When a plaintiff chooses to challenge a municipality's unconstitutional

policy establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay out the premise of deliberate indifference."). Instead, Mr. Holloway argues that "there was no policy in place to track inmates for who (sic) probable cause was found and who may have engaged in a video-conference with a commissioner," and muses that "a suspect such as Holloway could have been held indefinitely pending charges *actually* being filed against him." (emphasis in original). Without showing that an existing, unconstitutional policy or custom resulted in a constitutional deprivation, Mr. Holloway has failed to provide evidence sufficient to support a *Monell* claim against the Sheriff. The Court therefore finds that the Sheriff is entitled to judgment as a matter of law.

In his response brief, Mr. Holloway appears to allege a second *Monell* claim, arguing that that the Delaware County Sheriff has a custom and policy to deprive pre-trial detainees of narcotic pain medication. [Dkt. 78-1 at 7-10.] To the extent that Mr. Holloway is attempting to assert a new *Monell* claim against the Sheriff at the summary judgment stage, the Court rejects any such argument. Mr. Holloway may not amend his complaint through arguments in his brief in opposition to summary judgment. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *see also Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) ("[Plaintiff] did not include the promissory estoppel claim in his complaint or his amended complaint, adding it only at the summary judgment stage. This is too late in the day to be adding new claims."). Accordingly, the Court finds that the Sheriff is entitled to judgment as a matter of law and grants his motion for summary judgment.

### B. Mr. Holloway's Claims Against the Medical Defendants

Mr. Holloway has also brought § 1983 claims against Dr. A1-Shami, Nurse St. Myers, and Nurse Hamilton, alleging liability in their individual capacities for deliberate indifference to

7

his serious medical needs, a cause of action that the Supreme Court has recognized in *Farmer v. Brennan*. 511 U.S. 825, 828 (1994). Deliberate indifference may be manifested "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam) (internal citations omitted).

To succeed on a deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective component. *Farmer*, 511 U.S at 834. First, he must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer v. Kendall Cnty*., 200 F.3d 805, 810 (7th Cir. 2000) (citations omitted). Then, he must demonstrate that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S at 834. To make this subjective showing, the plaintiff must establish that the defendant knew he faced a substantial risk of harm and disregarded that risk. *Id*. Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (citation omitted). The standard is comparable to that required for criminal recklessness. *Farmer*, 511 U.S at 839.

Mr. Holloway has met his burden of presenting evidence adequate to support a finding that he had a serious medical condition, [*see* dkt. 78-1 at 7-8 (detailing his blood clotting disorder and resulting chronic pain)], and Defendants do not argue otherwise. At issue, then is whether Mr. Holloway has presented enough evidence of deliberate indifference to survive a motion for summary judgment by Dr. A1-Shami, Nurse St. Myers, and Nurse Hamilton.

### 1. Mr. Holloway's § 1983 Claim Against Dr. Al-Shami

Mr. Holloway claims that Dr. Al-Shami should be held liable under § 1983 because he did not prescribe the narcotic Oxycontin to manage Mr. Holloway's pain during his pretrial detention. [Dkt. 78-1 at 3.] Mr. Holloway claims that because the non-narcotic pain medications Dr. Al-Shami prescribed were not an "effective substitute," [*id*], for Oxycontin, Dr. Al-Shami acted with deliberate indifference to Mr. Holloway's serious medical needs. [*Id*. at 2.]

Dr. Al-Shami admits he substituted non-narcotic pain medication for Oxycontin, opining that the narcotic Oxycontin was not medically necessary to manage Mr. Holloway's pain. [Dkt. 76-2 at 2.] He contends that he acted not with deliberate indifference, but in accordance with his own medical opinion and judgment. [*Id* at 2-3.] In his response brief, Mr. Holloway acknowledges Dr. Al-Shami's treatment of his pain with non-narcotic medications, but argues that by not prescribing Mr. Holloway the Oxycontin he requested, Dr. Al-Shami "disregarded both his pain and the medication he needed to control it ... depriving [him] of his constitutional right to adequate medical care." [Dkt. 78-1 at 9.] The Court disagrees.

A medical professional's deliberate indifference may be inferred when "the medical professional's decision is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). *See also King v. Kramer*, 11-2204, 2012 WL 1889765 *4 ("We must remain sensitive to the line between malpractice and treatment that is so far out of the bounds that it was blatantly inappropriate or not even based on medical judgment.").

Although Mr. Holloway asserts that "[f]ailing to provide medical treatment for a painful condition can support a deliberate indifference claim," [dkt. 78-1 at 9], Mr. Holloway ignores the fact that Dr. Al-Shami did provide Mr. Holloway with pain medication he deemed adequate

in his medical opinion to manage Mr. Holloway's pain, albeit not the Oxycontin that Mr. Holloway preferred and desired. Mr. Holloway's disagreement with Dr. Al-Shami's conclusion that Mr. Holloway's narcotic drug use was not medically necessary does not support a claim for deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Indeed, even if Dr. Al-Shami's conduct amounted to medical malpractice, Mr. Holloway still could not prevail. Medical malpractice or disagreement with a doctor's medical judgment does not constitute deliberate indifference. *Id.* ("Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference."); *King*, 11-2204, 2012 WL 1889765 *4. To survive summary judgment, Mr. Holloway must provide sufficient evidence to support the inference that Dr. Al-Shami's conduct fell outside the bounds of medical judgment. Although through argument Mr. Holloway challenges the soundness of Dr. Al-Shami's medical opinion, he has provided no competent evidence to counter Dr. Al-Shami's opinion, and he has submitted no expert testimony that Dr. Al-Shami's treatment "was a substantial departure from accepted professional judgment." *Estate of Cole by Pardue*, 94 F.3d at 261-62. Because Mr. Holloway has failed to provide sufficient evidence to support the inference that Dr. Al-Shami's treatment constituted deliberate indifference, the Court finds that Dr. Al-Shami is entitled to judgment as a matter of law.

### 2. Mr. Holloway's § 1983 Claim Against Nurses Hamilton and St. Myer

Mr. Holloway has also sued Nurse Hamilton and Nurse St. Myer ("the Nurses") under §1983, alleging a violation of the Eighth Amendment. Mr. Holloway contends that by adhering to Dr. Al-Shami's instructions, the Nurses acted with deliberate indifference to his serious medical needs. [Dkt. 78-1 at 7-10.]

While nurses may generally defer to instructions given by physicians, Mr. Holloway is correct in his assertion that nurses may not blindly defer to physicians in circumstances in which a patient faces apparent and imminent harm. *See Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (holding that a nurse's deference to a physician "may not be blind or unthinking, particularly if it is apparent that the physician's order will harm the patient."). Accordingly, Mr. Holloway may successfully assert a claim of deliberate indifference against the Nurses if he can show that they "unthinkingly defer[red]" to Dr. Al-Shami and "ignore[d] obvious risks to [his] health." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 683 (7th Cir. 2012). Again, he has failed to make an adequate showing here.

As the Court has discussed above, Dr. Al-Shami's medical judgment and subsequent orders regarding Mr. Holloway's care did not amount to deliberate indifference; it follows that the Nurses' adherence to Dr. Al-Shami's orders would likewise fail to amount to deliberate indifference. This case is not one in which questions of material fact exist about whether medical opinions "were so far afield from an appropriate response... that they fell outside the bounds of [their] professional judgment," *King v. Kramer*, 11-2204, 2012 WL 1889765 *5 (7th Cir. May 25, 2012). Mr. Holloway does not argue that the Nurses' conduct defied all medical judgment. Indeed, Mr. Holloway argues only that "it was the custom and policy of the Delaware County Sheriff, by and through Dr. Al-Shami, to deprive pretrial detainees of narcotic pain medication...[a]nd the nurses ... were personally involved in carrying out this policy." [Dkt. 78-1 at 8-9.]

This argument smacks of a *Monell* type claim, and again Mr. Holloway has raised it too late, asserting it for the first time in his summary judgment opposition. As stated earlier, to the extent that Mr. Holloway attempts to allege a heretofore unarticulated *Monell* claim against

Defendants, the Court rejects any such argument. *Grayson*, 308 F.3d at 817; *Auston*, 116 F.3d at 255. To the extent that Mr. Holloway points to this alleged policy as evidence that the Nurses behaved recklessly in following Dr. Al-Shami's orders, the Court rejects that argument as well. As the Court has discussed above, the Nurses' deference to Dr. Al-Shami's medical opinion that non-narcotic pain medication could be substituted for Oxycontin did not amount to recklessness or deliberate indifference.

Because Mr. Holloway has failed to provide sufficient evidence to support the inference that the Nurses were deliberately indifferent to his serious medical needs, the Court finds that the Nurse are entitled to judgment as a matter of law. The Court therefore grants their motion for summary judgment.

## IV.
### CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Leave to File Sur-Response. [Dkt. 87]. For the foregoing reasons, the Court finds that there is no genuine issue of material fact regarding Mr. Holloway's §1983 claims and that, based on the evidence in the record, Defendants are entitled to judgment as a matter of law. The Court **GRANTS** Defendants' Summary Judgment Motions. [Dkts. 67; 74.] Judgment will issue accordingly.

06/05/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

James F. Bleeke
BLEEKE DILLON CRANDALL PC
jim@bleekedilloncrandall.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Ian L. Stewart
STEPHENSON MOROW & SEMLER
istewart@stephlaw.com